GRIFFIN INDUSTRIES, INC., Larry Findley, Fermin Carlos Garza, David Gonzales, Russell McNorton, and Henry Villarreal, Relators,

v.

**THE HONORABLE THIRTEENTH COURT OF APPEALS,** Respondent.

No. 96–0101.

Supreme Court of Texas.

Argued April 18, 1996.

Decided Nov. 15, 1996.

William Dibrell, Diane M. Henson, Austin, Lev Hunt, Corpus Christi, for Relators.

Willard G. Holgate, Corpus Christi, for Respondent.

OWEN, Justice.·

In this mandamus proceeding, the trial court sustained a contest to an affidavit of inability to pay costs on appeal under Rule 40(a)(3) of the Texas Rules of Appellate Procedure. The court of appeals conditionally issued a writ of mandamus concluding that the trial court had abused its discretion. 913 S.W.2d 752. Griffin Industries sought mandamus relief in this Court, and we granted leave to file. Because we agree with the holdings of the court of appeals, we deny the petition for writ of mandamus.

I

Griffin Industries recycles used cooking grease. Griffin Industries accused Villegas and her husband of stealing grease, and they were both arrested. Mr. Villegas died about three months after the incident. Ultimately, the prosecutor dropped the charges against Maria Villegas. She then sued Griffin Industries and others for malicious prosecution, false arrest, and wrongful death. After Villegas presented her case, the trial court granted a motion for a directed verdict in favor of Griffin Industries. Villegas sought to appeal and filed an affidavit of inability to pay costs. Both the court reporter and Griffin Industries contested the affidavit.

Maria Villegas has been unemployed since 1991. She has an eighth-grade education and a GED. In the past, she has worked as a secretary and has owned a cleaning business, but she testified that arthritis in her fingers and problems with her hands, for which she has undergone surgery, now foreclose her from occupation in either of those fields. Villegas's entire income, less than $500 per month, comes from Social Security Disability and Supplemental Security Income benefits. At the time of the hearing on the contest to the affidavit of inability to pay costs, she was no longer eligible for food stamps because she had moved across county lines, although she had reapplied for this assistance.

As a condition of receiving Social Security benefits, Villegas testified that the Texas Rehabilitation Commission directed her to obtain retraining in a new line of work. Accordingly, she had attended Texas State Technology College as a full-time student from 1993 to 1995 and, at the time of the hearing, was attending Bee County College on a part-time basis to complete remedial course work necessary to obtain an associates degree in building construction.

Villegas rents a one-bedroom apartment for $360 a month and pays an additional $60 to $90 in utilities. She lives with her daughter Elizabeth and her daughter's infant son Joshua. Elizabeth supplies groceries for the family from the food stamps she receives. Villegas testified that she has no savings account, stocks, bonds, real property, jewel-

ry, or other assets, except a poorly running 1985 Buick worth at most $500. She borrows clothes from her children. Moreover, Villegas owes $6,986.17 in federal income taxes, $2500 to her attorney for the defense of the criminal action, and $689.25 for expenses already incurred in this suit.

The court of appeals held that the trial court abused its discretion in sustaining the contest to the affidavit because Villegas proved that she was indigent and unable to pay the costs of appeal. 913 S.W.2d at 756. Further, the court of appeals held that the ability of an attorney to pay for an appeal should not defeat the client's status as an indigent. *Id.*

## II

■ Rule 40 of the Texas Rules of Appellate Procedure governs appeals by indigent parties. Under that rule, the burden of proof at the hearing on the contest to the affidavit of inability to pay costs rests on the appellant to sustain the allegations in the affidavit. TEX.R.APP.P. 40(a)(3)(D). The appellant must prove that she could not pay the costs of appeal " 'if [she] really wanted to and made a good-faith effort to do so.' " *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex.1980) (quoting *Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942)). This standard is met, however, by proof that the appellant depends on public assistance. As we said in *Goffney v. Lowry,* 554 S.W.2d 157, 159–60 (Tex.1977):

> The fact that any individual is dependent upon the charity of the public afforded through the various welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs or give security therefor.

This standard is consistent with the standard for an affidavit of inability to secure costs in the trial court. *See* TEX.R.CIV.P. 145. Rule 145 defines a "party who is unable to afford costs" as "a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs." Villegas's testimony

established that such programs were her only source of income.

The evidence offered by Griffin Industries does not negate this prima facie case. First, Griffin Industries pointed out that Villegas had not attempted to obtain a loan for the appellate costs by borrowing against her claim. However, Villegas's evidence established that she had no collateral and no income stream to secure a loan from any reasonable commercial lender. Requiring her to obtain formal loan rejections would exalt form over substance, as such rejections would "merely buttress th[e] conclusion that she is financially unable to meet any of the court costs or give security therefor." *Goffney,* 554 S.W.2d at 160.

Next, Griffin Industries offered evidence that in the past Villegas may have misrepresented her marital status to obtain AFDC benefits for her children. However, she no longer receives those benefits, as her children have reached majority, and such expired benefits form no part of her prima facie case. Therefore, whether she once misrepresented her marital status to obtain these benefits is irrelevant.

In addition, Griffin Industries offered Villegas's testimony from the underlying trial indicating that she may also have been untruthful about her marital status or whether her husband lived with her to doctors who treated her for the illnesses forming the basis of her compensable disability.[1] Griffin Industries argues that Villegas's untruthfulness about her marital status is evidence that Villegas was not entitled to the government benefits that she now receives and which established her prima facie case.

Griffin Industries offered no evidence, however, that any misrepresentation by Villegas to her doctor about her marital status was financially motivated or otherwise material to the Social Security Administration's ruling that Villegas is disabled or in need of SSI. Villegas testified that she went to her doctor because she was sick, not to qualify for disability benefits, and that it was her

---

1. Villegas may indeed have been telling the truth. She testified that she was never formally married and that Mr. Villegas had another common-law wife before her. After Mr. Villegas died, she had to consult an attorney to help determine if she had in fact been his wife.

doctor who suggested that she seek benefits. In fact, the evidence conclusively establishes that her marital status was irrelevant to her qualification for government benefits, as the Administration's hearing on whether to award Villegas benefits occurred after Mr. Villegas's death.[2]

Griffin Industries counters that Villegas's alleged fraud in obtaining benefits is at least relevant to her credibility. However, even assuming, as we must, that Villegas misrepresented her marital status in the past to obtain now-expired AFDC benefits for her children and that she was untruthful about her marital status in discussions with doctors who treated her, such misrepresentations do not amount to evidence that Villegas obtained the government benefits she now receives by fraud. The evidence is uncontroverted that Villegas actually receives government assistance, and Griffin Industries offered no medical or other evidence suggesting that Villegas was not legally entitled to this assistance.

▇▇ The dissent argues that evidence of misrepresentations by Villegas is at least relevant to her credibility. 934 S.W.2d at 356. Apparently, the dissent is of the view that even after a witness testifies that he or she is dependent on public assistance and thereby establishes a prima facie case of indigence, the trial court simply may refuse to believe that the witness is credible and may conclude that the witness is not in fact indigent. The dissent misapprehends the effect of establishing a prima facie case. To overcome a prima facie showing, an opposing party must offer *evidence* to rebut what has been established. The trial court is not free simply to disbelieve the direct, positive evidence that establishes the prima facie case. *See, e.g., Sansom v. Sprinkle,* 799 S.W.2d 776, 778 (Tex.App.—Fort Worth 1990, orig. proceeding).

▇▇ The issues raised in *Sansom* were similar to those in the case before us. At a hearing on a contest to an affidavit of inability to pay costs on appeal, Sansom testified that he had no job, no funds to pursue an

appeal, and subsisted on food stamps. *Id.* at 777. The trial court nevertheless sustained the challenge. *Id.* On appeal, the court of appeals recognized that generally a trial court is permitted, even required, to judge the credibility of testimony. *Id.* at 778. However, as the court of appeals in *Sansom* correctly held, when a prima facie case of dependence on public assistance has been established, opposing parties bear the burden of introducing some evidence that the witness is not dependent on food stamps or that other funds are available. *Id.* The trier of fact is not permitted to disregard entirely the word of the witness that he was indigent. *Id.*

Finally, Griffin Industries points out that counsel for Villegas judicially admitted at the hearing on the indigency affidavit contest that Villegas has not sought or obtained employment during the time she has been receiving disability benefits because Social Security rules prohibit recipients of disability benefits from working. From this admission and from the fact that Villegas has attended school full time and done well there, Griffin Industries contends that the trial court could have inferred that Villegas was really able to work. No "inference" can be drawn from these facts. Villegas's counsel accurately informed the trial court of the Administration's rule. Further, Villegas testified that attending school was a condition of receiving the disability benefits. To use the conditions that the government has placed on Villegas's receipt of assistance as proof that she is not really entitled to that assistance should be too ironic a Catch–22 for this Court to countenance. For these reasons, we hold that Griffin Industries has offered no evidence negating Villegas's prima facie case that she is unable to pay costs without assistance from her lawyer.

### III

The only remaining issue is what effect Villegas's fee arrangement with her attorney has on the contest to her affidavit of inability to pay costs on appeal. Griffin Industries argues that because Villegas's fee agreement

---

**2.** Villegas testified in the main trial that she told the doctors that she was unmarried because she

was "ashamed" that she had never been formally married to her common-law husband.

with her attorney provided that he would pay or advance costs, Villegas does not meet the test for indigency and that, therefore, the trial court did not abuse its discretion in sustaining the indigency contest. It is undisputed that counsel for Villegas has not paid the costs of appeal. We are thus faced with the question of how courts are to treat the truly indigent who are able to find a lawyer willing to represent them for a contingent interest in any recovery, but unwilling to pay the costs of an appeal.

The courts of appeals are divided on the question whether the existence of a contingency fee agreement is grounds for sustaining a contest to a litigant's claim that he or she is unable to pay costs. *Compare Modern Living, Inc. v. Alworth,* 730 S.W.2d 444, 446 (Tex.App.—Beaumont 1987, orig. proceeding) (holding that an attorney is not obligated to pay costs of appeal by virtue of a contingency fee agreement and that the trial court erred in sustaining contest) *with Culpepper v. Coker,* 769 S.W.2d 373, 375 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding) (holding that the trial court did not abuse its discretion in sustaining indigency contest because the appellant did not prove that his attorney could not bear the costs of appeal).

■■■ Our state Constitution and our rules of procedure recognize that our courts must be open to all with legitimate disputes, not just those who can afford to pay the fees to get in. TEX. CONST. art. 1, § 13; TEX. R.CIV.P. 145; TEX.R.APP.P. 53(j). Under the facts of this case, the contingency fee agreement should not nullify the indigency status of Villegas.

The contingent fee contract between Villegas and her attorney William Holgate is ambiguous at best regarding the payment or advancement of costs on appeal. The fee agreement provides in pertinent part:

It is agreed that all necessary disbursements, witness fees and court costs will be separately paid by [Villegas], including traveling expenses and incidental disbursements necessary to conduct hearings or trials or to interview witnesses, etc., [Villegas] to advance sufficient sums to cover said disbursements and costs from time to time when requested by said Attorney. In the event that [Villegas] does not advance the sums as stated above for disbursements and costs at the rate of twelve percent (12%) per annum [sic]. Said Attorney is herewith granted a lien upon said cause or causes of action and any real or personal property or thing recovered therein either by [Villegas] or said attorneys to secure payment of the fees herein provided for, and of any disbursements not independently paid by [Villegas].

Resolving all ambiguities in favor of the trial court's ruling, the most that can be said about the agreement is that it obligates Holgate to loan costs of court to Villegas.

No one disputes that Holgate paid none of the costs in this case from its inception. When Holgate agreed to pursue this suit, Villegas owed him $2,500 for his earlier representation of her in the criminal proceeding. Holgate testified that he realized Villegas would not be able to pay all the court costs in the present suit and that he could not afford to do so. Accordingly, he promptly referred the case to another attorney who paid the filing and service fees and apparently some of the deposition costs. That attorney eventually withdrew and returned the file to Holgate. Holgate thereafter concluded discovery and represented Villegas in a jury trial. The trial court directed a verdict against Villegas at the close of her evidence. Villegas sought to appeal, and at the hearing contesting Villegas's affidavit of inability to pay, the evidence established that neither Villegas nor her attorney had paid costs of discovery done by Holgate.

The evidence is uncontroverted that Villegas asked her attorney to pay the costs for a statement of facts and the transcript, but that he would not or could not do so. Both Villegas and Holgate testified to this fact. It is of little solace to Villegas that the trial court concluded that her attorney had a contractual obligation to advance costs. Whatever contractual or other rights an indigent litigant has against an attorney are not a substitute for the present means to pay the costs of an appeal. A suit against the attorney after the appeal is dismissed will not revive the appeal.

■ We recognize, however, that the fee agreement between an attorney and an indigent client may be considered in determining if the litigant is able to pay costs on appeal. If the agreement provides that the attorney is to pay or advance costs, and the appellant makes no further showing, the agreement would be some evidence that the appellant has a source of funds from which to pay costs. But, when the facts establish that the attorney will not or cannot pay those costs, as is the case here, we cannot erect a legal fiction that an indigent has the ability to pay " 'if [she] really wanted to.' " *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex.1980) (quoting *Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942)).

■ The right of the indigent to pursue an appeal should not turn on whether an attorney abides by an agreement to pay or to advance costs. When the attorney is obligated to the client to pay or advance costs but will not or cannot do so, the indigent should not be stripped of his or her indigent status. Through civil suits and the disciplinary process, our legal system has a means of extracting justice from attorneys who violate obligations to their clients and of deterring such conduct. To demand that indigent clients forfeit appellate rights for their attorneys' transgressions or inability to pay would leave indigents faced with a Hobson's choice on appeal:of the right to a statement of facts and the transcript, or they can continue to have representation by counsel on a contingent-fee basis, only to have their case dismissed for inability to pay costs if their attorneys will not or cannot pay. Such a result would effectively say that the poor could not be represented by lawyers who are unwilling to pay court costs. If a lawyer is unable or unwilling to pay out-of-pocket costs, an indigent's right to access to the courts would be at an end. In marginal (but not frivolous[3]) cases, indigents would be penalized if they could not find an attorney who would be willing to pay appellate costs. (There has been no contention in the trial court or the court of appeals that Villegas's appeal is frivolous, and we express no opinion on that issue.)

We realize that official reporters have many demands placed on their time and that preparing appellate statements of facts without pay comes not only at a monetary sacrifice, but also at the expense of completing court business. However, our appellate rules provide some measure of protection. Under Texas Rules of Appellate Procedure 89 and 182(a), courts of appeals and this Court have the authority to tax costs against a losing party. If an indigent is successful on appeal, nothing prevents our appellate courts from ordering the losing party to pay the cost of the statement of facts. And, while the principal complaint of court reporters stems from the cases in which indigents have obtained a free statement of facts and are not successful on appeal, our rules address such cases: an indigent is entitled to a free statement of facts. Tex.R.App.P. 53(j)(1). Trial courts could lessen the financial burden on the court reporter by seeking authorization from this Court to record court proceedings by electronic recording, at least experimentally for some cases. *See* Rules Governing the Procedure for Making a Record of Court Proceedings by Electronic Recording, *reprinted in* Texas Rules of Court—State 345–46 (West 1996).

For the above reasons, we agree with the court of appeals that the trial court abused its discretion in sustaining the contest to the affidavit of inability to pay costs on appeal. Therefore, we deny Griffin Industries' petition for a writ of mandamus.

BAKER, Justice, joined by ENOCH, Justice, dissenting.

Maria Villegas' testimony showed that her only income source was from welfare pro-

---

**3.** Section 13.003 of the Texas Civil Practice and Remedies Code provides:

(a) A court reporter shall provide without cost a transcript of the statement of facts for appealing a judgment from the court only if:

(1) an affidavit of inability to pay the cost of the appeal has been filed under the Texas Rules of Appellate Procedure; and

(2) the trial judge finds:
(A) the appeal is not frivolous; and
(B) the statement of facts is needed to decide the issue presented by the appeal.

(b) In determining whether an appeal is frivolous, a judge may consider whether the appellant has presented a substantial question for appellate review.

grams. The Court correctly observes that a person's dependence upon welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs or give security therefore. *See Goffney v. Lowry*, 554 S.W.2d 157, 159–160 (Tex. 1977). However, the Court concludes that the evidence Griffin Industries offered did not negate Villegas' prima facie case. 934 S.W.2d at 351. The Court reaches this conclusion by reweighing the evidence and by reevaluating the witnesses' credibility. In reaching this conclusion, the Court exercises discretion it does not possess and acts contrary to well established principles of mandamus law. I respectfully dissent.

## I. STANDARD OF REVIEW

In a mandamus proceeding, we review the trial court's decision for an abuse of discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). To determine if there is an abuse of discretion, we review the entire record. *See Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987). Our focus remains on the trial court's order regardless of the court of appeals' decision. *Johnson*, 700 S.W.2d at 918. The party challenging the trial court's decision must establish that the facts and law permit the trial court to make but one decision. *Johnson*, 700 S.W.2d at 917. An appellate court may not reverse for an abuse of discretion merely because it disagrees with the trial court's decision, if that decision was within the trial court's discretionary authority. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). In a mandamus proceeding, the reviewing court must give deference to the district court's resolution of a factual issue, and cannot set that decision aside unless it is clear from the record that the trial court could have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992).

In a nonjury trial or hearing, the trial court is the sole judge of the witness' credibility and the testimony's weight. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex.App.—Dallas 1989, writ denied). The trial court, as the fact-finder, has the right to accept or reject all or any part of any witness' testimony. *Hood v. Texas Indem. Ins. Co.*, 146 Tex. 522, 209 S.W.2d 345, 346 (1948). The trial court may believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The trial court may resolve inconsistencies in any witness' testimony. *McGalliard*, 722 S.W.2d at 697.

The reviewing court is not a fact-finder and cannot pass upon a witness' credibility or substitute its judgment for that of the fact-finder even if there is conflicting evidence that would support a different conclusion. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The trial court as the fact-finder is exclusively in a position to observe the witnesses and to evaluate their testimony and credibility. *Glassman & Glassman v. Somoza*, 694 S.W.2d 174, 176 (Tex.App.—Houston [14th Dist.] 1985, no writ).

Opinion testimony does not establish any material fact as a matter of law. *See Hood*, 209 S.W.2d at 346. As this Court stated in *Hood:*

> that character of testimony [opinion testimony] is but evidentiary and is never binding upon the trier of facts.

*Hood*, 209 S.W.2d at 346.

A reviewing court cannot consider an interested witness' uncontradicted testimony as doing more than raising a fact issue unless that testimony is clear, direct, and positive and there are no circumstances in evidence tending to discredit or impeach such testimony. *McGalliard*, 722 S.W.2d at 697; *Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 169 (Tex.1965).

An appellate court may not deal with disputed factual matters in a mandamus proceeding. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex.1991); *Dikeman v. Snell*, 490 S.W.2d 183, 186–87 (Tex.1973). An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). An abuse of discretion does not exist if some evidence in the record shows the trial court followed guiding rules and principles. *Morrow*, 714 S.W.2d at 298.

## II. Proof of Indigency

A party asserting indigency bears the burden to sustain the allegations of her affidavit. *See* TEX.R.APP.P. 40(a)(3)(D). The party must prove and the trial court must determine whether she would be unable to pay "if she really wanted to and made a good faith effort to do so." *Allred v. Lowry*, 597 S.W.2d 353, 355 (Tex.1980); *Pinchback v. Hockless*, 139 Tex. 536, 164 S.W.2d 19, 20 (App.1942).

A trial court can consider a number of factors when determining the validity of a challenge to an indigency affidavit. Some of these factors include whether the litigant is dependent upon public charity afforded through various welfare programs, *Goffney*, 554 S.W.2d at 159–60; the litigant's credit rating, *Pinchback*, 164 S.W.2d at 19; the value of the litigant's claim and whether it could afford the basis for security of a loan, *Wallgren v. Martin*, 700 S.W.2d 28, 30 (Tex. App.—Dallas 1985, orig. proceeding); the litigant's employment history, *Goffney*, 554 S.W.2d at 160; and that the litigant cannot secure a bona fide loan to pay the costs, *Pinchback*, 164 S.W.2d at 20. Today the Court holds an additional factor the trial court can consider is the fee agreement between an attorney and an indigent client to determine if the litigant is able to pay costs on appeal. 934 S.W.2d at 354.

## III. Application of Law to Facts

Proof that a litigant is dependent upon public charity afforded through welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs or give security therefor. *Goffney*, 554 S.W.2d at 159–60. It is true in this case that Villegas established that welfare programs were her only income source. The Court concludes that Griffin's evidence does not negate Villegas' prima facie case. In reaching this conclusion, I believe that the Court disregards established mandamus law and, to reach the result it desires, it reweighs the evidence and rejudges the witness' credibility.

The Court notes that Griffin offered evidence that in the past Villegas may have misrepresented her marital status to obtain AFDC benefits for her children. The Court notes that Villegas no longer receives those benefits because her children have reached majority and these expired benefits are not part of her prima facie case. The Court concludes that whether she once misrepresented her marital status to obtain these benefits is irrelevant. Next, the Court observes that Griffin offered Villegas' testimony from the underlying trial indicating she may also have been untruthful about her marital status or whether her husband lived with her to the doctors who treated her for the illnesses forming the basis for her compensable disability. The Court notes that Griffin offered no evidence that any of Villegas' misrepresentations to her doctor about her marital status were financially motivated or otherwise material to a ruling that she was disabled and in need of welfare benefits. The Court concludes that the evidence conclusively established that her marital status was irrelevant to her qualification for government benefits.

The Court brushes aside Griffin's argument that Villegas' alleged fraud in obtaining benefits is at least relevant to her credibility. The Court notes the only evidence about Villegas' disability is her testimony that she is too ill to work or even to care for her grandchild, that she has dizzy spells and bouts of nausea, that medication she takes prevents her from working, and that one of her doctors has questioned whether she will be able to hold down by attending vocational school. The Court observes that Griffin did not controvert this evidence.

For the Court to conclude that Griffin's evidence about Villegas' misrepresentations is irrelevant is to reweigh the evidence. This Court does not possess the discretion to exercise that prerogative. That discretion rests solely in the trial court. *Cain*, 709 S.W.2d at 176; *Tate*, 767 S.W.2d at 225.

For the Court to conclude that Villegas' evidence about her disability is irrelevant to credibility because it is uncontroverted is to rejudge the witness' credibility. This Court does not possess the discretion to exercise that prerogative. That discretion rests sole-

ly in the trial court. *Cain,* 709 S.W.2d at 176.

We have held opinion testimony does not establish any material fact as a matter of law. *See Hood,* 209 S.W.2d at 346. The reviewing court cannot consider an interested witness' uncontradicted testimony as doing more than raising a fact issue unless the testimony is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony. *McGalliard,* 722 S.W.2d at 697. I submit that this record shows there are circumstances that tend to discredit or impeach Villegas' testimony. It was the trial court's prerogative, as the fact finder, to accept or reject all or any part of Villegas' testimony. *Hood,* 209 S.W.2d at 346. The trial court, as the fact finder, could resolve any inconsistencies in her testimony. *McGalliard,* 722 S.W.2d at 697. Because opinion testimony does not establish any material fact as a matter of law, the trial court could completely disbelieve her testimony that she was disabled. *Hood,* 209 S.W.2d at 346; *McGalliard,* 722 S.W.2d at 697.

Additionally, Griffin pointed out that Villegas' counsel judicially admitted at the indigency hearing that his client had not sought or obtained employment while she was receiving disability benefits because the Administration's rules prohibit disability benefits recipients from working. The Court observes that the trial court could draw no inference from these facts. The Court concludes that Villegas' counsel accurately informed the trial court of nothing more than the Social Security Administration's rules. However, in reaching this conclusion, the Court does nothing more than reweigh this evidence and reach its own conclusion about its weight. The trial court, as the fact finder, could infer that Villegas chose not to work because if she did so she would no longer receive disability income.

Villegas testified that her only income source was from government assistance programs and totalled about $490.00 a month. She said she was on Medicare and Medicaid and had applied for food stamps. She said she was disabled and unable to work. She said she had no substantial assets except a non-working automobile worth about $500.00. She admitted she had not tried to get a bank loan or sell an interest in her lawsuit to pay for costs of appeal. She testified she had

attended college full-time from 1993 to 1995. After 1995, she was taking only four hours of classes a week and her remaining time was free time. She testified she had no problems completing her classwork and she made the Dean's List in the past. She testified that she had not tried to obtain employment for the past two and one-half years. She admitted she misrepresented her marital status to federal authorities to receive government benefits in the past.

Additionally, the trial court properly considered the nature of the fee agreement between Villegas and her attorney. The fee agreement is ambiguous about whether the attorney agreed to loan Villegas funds to pay costs or whether he agreed to an interest rate if he later agreed to loan her funds to pay costs. Therefore, the trial court properly considered extrinsic evidence of the parties' intent, including their earlier actions under the contract. *See Trinity Universal Ins. Co. v. Ponsford Bros.,* 423 S.W.2d 571, 575 (Tex.1968); *Webster v. U.S. Fire Ins. Co.,* 882 S.W.2d 569, 572 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Under this agreement, the trial court could properly consider whether Villegas' attorney was a potential source of funds to pay the court costs.

Based on the entire record before the trial court, I cannot say that the trial court's decision was so unreasonable and arbitrary that it was a clear and prejudicial error of law. *See Walker,* 827 S.W.2d at 839. In my view, this case involves factual disputes and questions of witness credibility. It is inappropriate for this Court to substitute its judgment for the trial court's. *Walker,* 827 S.W.2d at 839–40; *Davis,* 571 S.W.2d at 862.

## IV. CONCLUSION

This Court's precedent requires that, under an abuse of discretion standard of review, we may not reverse because we merely disagree with the trial court's decision. *Beaumont Bank, N.A.,* 806 S.W.2d at 226. We must give deference to the trial court's resolution of factual issues and we cannot set aside the trial court's decision unless it is clear from the record that the trial court could have reached only one decision. *Walker,* 827 S.W.2d at 839–40. If the evidence

conflicts and some evidence reasonably supports the trial court's decision, no abuse of discretion exists and we may not set aside the trial court's decision. *Davis,* 571 S.W.2d at 862. The Court ignores the limitations on a reviewing court under established precedent and substitutes its judgment for the trial court's. The Court reweighs the evidence and rejudges the witness' credibility. This is an inappropriate exercise of non-existent discretion. *Walker,* 827 S.W.2d at 839–40. I respectfully dissent.