**In re Lydia SOSA.**

**No. 04–97–00975–CV.**

Court of Appeals of Texas, San Antonio.

Sept. 30, 1998.

Hugo Xavier De Los Santos, San Antonio, for Appellant.

Humberto G. Garcia, Johnson, Curney, Garcia & Farmer, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and GREEN, JJ.

## OPINION

RICKHOFF, Justice.

Lydia Sosa has filed a petition for a writ of mandamus to compel the Honorable Andy Mireles to set aside an order sustaining a contest to an affidavit of indigence. Because we are bound by the supreme court's decision to favor the rights of indigents to appeal, we must conditionally grant the writ.

### Factual and Procedural Background

Sosa sued George Cardenas to recover for injuries arising out of a car accident. The jury found in favor of Cardenas, and the trial judge signed a judgment on the jury's verdict on August 5, 1997. Sosa filed a timely motion for new trial. On November 3, 1997, she filed an affidavit of indigence, stating she was unable to provide a cost bond, and on November 6, 1997, Cardenas filed a contest to the affidavit. On November 14, 1997, the trial judge conducted a hearing and orally sustained the contest from the bench. He later signed a written order memorializing this ruling.[2]

### Discussion

■ At a hearing on a contest to an affidavit of indigency, the appellant has the burden of proving the allegations in the affidavit. See *Griffin Indus., Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 351 (Tex.1996). The appellant must prove that she could not pay the costs of appeal if she really wanted to and made a good-faith effort to do so. See id. Sosa asserts that she satisfied this bur-

den and that the trial judge therefore abused his discretion by sustaining the contest. We agree.

■ Sosa's affidavit of inability to give cost bond states: 1) she has no assets subject to execution; 2) she receives governmental entitlements based on disability or indigence; 3) she is a disabled, unemployed widow; 4) social security benefits in the amount of $942 per month are her only source of income; 5) her monthly living expenses exceed $944;[3] 6) family members provide her financial assistance from time to time, but they cannot afford to lend her the money for the appeal; and 7) she owns no real estate or securities. The affidavit states that pursuant to her contract with her attorney, she is responsible for court costs; that the contract does not obligate the attorney to pursue an appeal; and that her attorney has agreed not to charge her a fee for the appeal.

At the hearing, the affidavit was admitted into evidence without objection. Sosa testified that she had been unemployed for the last three years because of disabling back problems and headaches. In describing her monthly expenses, her testimony was generally consistent with her affidavit, except that she indicated her monthly food bill might be around $100 a month. She stated that her attorney informed her she would need $1000 to post an appeal bond. On cross-examination, Cardenas's attorney questioned Sosa about the nature of her agreement with her attorney. Sosa was unclear on the exact meaning of "contingency fee," but her understanding was that her attorney would receive a fee only if she received a recovery in the case. She testified that her attorney had advanced nearly all the costs in the case so far.

---

**2.** Although the order sustaining the contest has the date November 17, 1997, stamped on it, the reporter's record reflects that the order was actually signed on November 24, 1997. Sosa argues that the order must therefore be set aside because it was signed more than ten days after the contest was filed. See Tex.R.App. P. 20.1(i)(2)(A), 20.1(i)(4). However, the record also contains a fiat setting the hearing on the motion to enter the order for November 24. This effectively extend-

ed the time for signing an order sustaining the contest to that date. See Tex.R.App. P. 20.1(i)(2); *Sabanos v. Rivera*, 893 S.W.2d 275, 276 n. 1 (Tex.App.—Houston [1st Dist.] 1995, no writ).

**3.** The affidavit lists the following monthly expenses: $228 for rent, $200 for food, $135 for utilities, $25 for telephone service, $60 for gas, $216 for car payment, and $85 for car insurance.

Sosa's testimony and her affidavit established that her monthly expenses exceeded her income and that she had no assets she could use to finance the appeal. Cardenas presented no evidence contradicting Sosa's testimony. Because the uncontroverted evidence established Sosa's indigency, the trial judge abused his discretion by sustaining Cardenas's contest. *See Regalado v. H.E. Butt Grocery Co.*, 863 S.W.2d 107, 112 (Tex. App.—San Antonio 1993, no writ); *see also Sansom v. Sprinkle*, 799 S.W.2d 776, 778 (Tex.App.—Fort Worth 1990, orig. proceeding) (in ruling on a contest to an affidavit of indigence, judge may not completely disregard the only positive evidence presented). We will now consider the reasons set forth in the trial court for sustaining the contest.

Rather than questioning her about her financial status, Cardenas's attorney cross-examined Sosa regarding her agreement with her attorney. The record reflects that the trial judge also viewed Sosa's agreement with her attorney as dispositive. The judge indicated that because Sosa and her attorney had agreed, when the case was initially filed in the trial court, that Sosa would pay the costs of the litigation, Sosa was bound by that agreement and could not later claim an inability to pay costs.[4]

■ Contrary to the suggestions made by Cardenas's attorney at the hearing, Sosa was not required to establish that her attorney was unable to pay the costs of appeal. In *Regalado*, the appellant presented uncontradicted evidence showing that he could not afford the costs of appeal. The appellee did not contest the appellant's financial condition, but "based on the assumption that [the appellant] had a contingency fee contract with

his attorney, [the appellee] argued that the attorneys representing an indigent plaintiff should be held responsible for the costs of appeal." *Regalado*, 863 S.W.2d at 112. This court rejected the appellee's argument because an indigent appellant is not required to show that others are unable to pay the costs of appeal. *See id.* (citing *Allred v. Lowry*, 597 S.W.2d 353 (Tex.1980) and *Goffney v. Lowry*, 554 S.W.2d 157 (Tex.1977)). We also held, "Nor is an appellant's attorney, because of his contingent fee contract, obligated to pay the costs of appeal." *Id.*

Moreover, the fact that Sosa was contractually responsible for court costs does not preclude her from appealing as an indigent. In *Griffin*, the fee agreement required the attorney to advance costs. The attorney nevertheless refused to advance the costs. The supreme court held that the agreement did not preclude the appellant from appealing as an indigent. *See Griffin*, 934 S.W.2d at 353.[5] Given that the supreme court did not treat the fee agreement as dispositive in *Griffin*, we will not treat it as dispositive here. *See also Grimaldo v. Lewis*, 915 S.W.2d 222, 223–24 (Tex.App.—Corpus Christi 1996, orig. proceeding) (appellants who were contractually responsible for court costs and who established they could not afford the costs of appeal were entitled to appeal as indigents even though their attorney was financially able to pay the costs of appeal and had already advanced some trial-court costs).

■ Finally, the record reflects that the trial judge may have based his decision partly on the perception that Sosa's attorney had abused the indigency provisions in a previous case in which Sosa was not a party.[6] We

---

4. The judge stated, for example, "If you have a contract to pay the costs, in midstream you can't say, 'Well, no, I'm unable because the outcome was not favorable to me.' Right? That's ... what's happening here." The judge also stated, "I mean, you've done this twice that I know of and I—I kind of need to make a decision on whether or not ... these contracts are outcome determinate. And I suppose it's as good a time as any to do it; take it up and see what they think."

5. The court stated, however, that in some cases it may be appropriate to consider the fee agree-

ment. As an example, the court stated that "[i]f the agreement provides that the attorney is to pay or advance costs, and the appellant makes no further showing, the agreement would be some evidence that the appellant has a source of funds from which to pay costs." *Griffin*, 934 S.W.2d at 354.

6. At one point, for example, the trial judge asked counsel, "What you want to do is have [the court reporter] do this for free for you, again, right? You had another case where you did this, right?" The court reporter has also filed a response in this court alluding to the previous case.

find the judge's desire to curb abuse laudable. We also realize that an indigent's appeal places a strain on the trial court, as well as the court reporter. *See Griffin*, 934 S.W.2d at 354. We believe, however, that depriving Sosa of a meaningful appeal is not the proper way to punish her counsel's perceived abuses. In *Griffin*, the supreme court rejected the idea that indigent appellants should "forfeit appellate rights for their attorneys' transgressions." *Id.* The court stated:

> Such a result would effectively say that the poor could not be represented by lawyers who are unwilling to pay court costs. If a lawyer is unable or unwilling to pay out-of-pocket costs, an indigent's right to access to the courts would be at an end. In marginal (but not frivolous) cases, indigents would be penalized if they could not find an attorney who would be willing to pay appellate costs.

*Id.*[7]

■ Mandamus is the appropriate remedy when a contest to an affidavit of indigence is improperly sustained. *See Smith v. McCorkle*, 895 S.W.2d 692, 693 (Tex.1995). We therefore conditionally grant the petition for writ of mandamus. We are confident that Judge Mireles will withdraw the order sustaining the contest. The writ will issue only upon certification to this court that he has not done so within ten days of the date of this opinion.

HARDBERGER, C.J., concurring.

HARDBERGER, Chief Justice, concurring.

I agree that *Griffin Industries, Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349 (Tex. 1996), controls this mandamus petition, and, therefore, I concur with the majority opinion. I do so with great reluctance.

In this case, an experienced, responsible trial judge made a decision that a party, who was still represented by trial counsel after a trial on the merits, was not entitled to a free appeal. I submit this is a reasonable ruling. If the public is required to foot the bill in such cases, trial counsel will be greatly tempted to roll the dice and file useless and frivolous appeals in a desperate effort to obtain a reversal. Why not appeal? After all, it is on the house, and Texas courts have been historically reluctant to sanction the filing of frivolous appeals. See David Lopez, *Why Texas Courts Are Defenseless Against Frivolous Appeals: A Historical Analysis with Proposals for Reform*, 48 Baylor L.Rev. 51 (1996).

Sosa had her day in court: she was entitled to and had a jury trial. She was represented by able counsel, who represented her, as is the custom, on a contingency fee. Unfortunately, she lost, but that is necessarily one of two possible results in a jury trial. Her attorney, after assessing the evidence and the law, made a decision that her appeal was not worth pursuing, considering the usual and customary costs of appeal. This is not an unusual event. Indeed, it is a process that happens each time a case brought under a contingency fee arrangement is lost.

Every lawyer is motivated to appeal upon receiving an adverse jury verdict. Much money and time, not to mention emotional energy, has been invested in the case by the end of a jury trial. It is difficult to abandon the case at that point. When a decision not to appeal is made, the attorney recognizes that the case simply does not have sufficient merit to warrant further expenditures. In the face of such a decision, is it wise for the courts to say: "Don't worry; we'll have the taxpayers pay for everything."? Not in the estimation of the trial judge in this case, and not in mine.

---

7. As in *Griffin*, "[t]here has been no contention" that Sosa's "appeal is frivolous, and we express no opinion on that issue." 934 S.W.2d at 354. We do, however, agree with the sentiments expressed in the Chief Justice's concurrence. The trial judge is in the best position to make the indigency determination, and that determination *should only be overturned for an abuse of discretion.* But this court rarely encounters attorneys who abuse the indigency provisions—probably because the desire to maintain the good will of trial judges and court reporters acts as a check on abusive behavior. Given that abuse is rarely encountered, and balancing the competing interests at stake, the supreme court has favored the rights of indigents to appeal and we are bound by *Griffin*.

The rationale of providing a free record for indigent appeals is to prevent an indigent person from being denied any rights that a person with means has. This is commendable and is an integral part of the democratic process. But a client who has made a contingency fee arrangement with an attorney is not without recourse. The contingency fee contract turns the solo client and her attorney into a partnership. Each has contributed something to the partnership, and each will be paid at the same time. It is the glory of the contingency system that a client, indigent or otherwise, with a meritorious claim, can be fully equal to the largest defendant.

Sosa has a lawyer that she has retained under a contingency fee arrangement. That lawyer is not indigent, nor lacking in energy or knowledge. I cannot believe that it is good policy in this situation to say to a potential appellant that if your attorney-partner will not pay the costs of appeal, the public will be ordered to do so. If this were the law of the land, why would any lawyer pay the costs of appeal? Get the taxpayers to do it. Granted, there must be a showing of indigence on the part of the client, but this is not hard to do in the case of injured wage-earners. The average person, unable to work because of an injury, is soon indigent. Indigents are represented every day in courts throughout the state, at every level, by attorneys who are partners in that injury by reason of a contingency fee contract. I am not at all comfortable in leaving the decision of who pays the costs of the appeal to the discretion of the attorney, who stands to gain from a favorable appellate decision. That is what happened in this case. It is little wonder that the trial court reacted as it did.

In *Griffin,* the Court stated that the appellate rules provide protection to the court reporters because costs can be assessed against a losing party. If the indigent appellant is the losing party, however, he or she cannot be ordered to pay costs. *Peterson v. Reyna,* 920 S.W.2d 288, 288 (Tex.1996). And in cases in which an attorney refuses to pay costs in violation of a contractual obligation to do so or in a manner inconsistent with his or her prior practice of advancing such costs, the attorney must not be too confident in the chances of the appeal succeeding. Even if an appeal is determined to be frivolous, the Texas Rules of Appellate Procedure do not expressly authorize sanctions against the attorney, and many courts would be unlikely to impose such sanctions in the absence of such express authority except in the most egregious of situations. *See Johnson v. Johnson,* 948 S.W.2d 835, 840 (Tex.App.—San Antonio 1997, writ denied); *see generally* David Lopez, *Why Texas Courts Are Defenseless Against Frivolous Appeals: A Historical Analysis with Proposals for Reform,* 48 Baylor L.Rev. 51 (1996).

Until the Supreme Court provides a better means to counter this abuse of the appellate process, trial judges, court reporters, and the attorneys for the parties who prevail at trial need to be cognizant that section 13.003 of the Texas Civil Practice and Remedies Code provides some relief. Under this section, a trial judge may deny a free clerk's record and free reporter's record if the trial judge finds: (A) the appeal is frivolous; or (B) the clerk's record or reporter's record is not necessary to decide the issue presented by the appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 13.003 (Vernon Supp.1998). A trial judge's ruling under this section will only be reversed on appeal if the trial court abuses its discretion. *De La Vega v. Taco Cabana, Inc.,* 974 S.W.2d 152, 153 (Tex.App.—San Antonio, 1998, no pet. h.). In view of *Griffin,* section 13.003 provides the only means by which we can slow the abuse of the appellate process at this time.