# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## NO. 03-05-00059-CV

========================


**Irma Facundo, Appellant**

**v.**

**Juanita Solis, Appellee**


========================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN303391, HONORABLE DARLENE BYRNE, JUDGE PRESIDING
========================================================================


## M E M O R A N D U M   O P I N I O N


Appellee Juanita Solis brought suit against appellant Irma Facundo for breach of contract, deceptive trade practices and fraud. After a bench trial, the district court rendered judgment in Solis's favor for $65,525. The trial court issued findings of fact and conclusions of law, and denied Facundo's motion for a new trial. In three points of error, Facundo challenges the admission of expert testimony and the award of damages in excess of the amount sought in the original petition. We affirm the judgment.


## FACTUAL AND PROCEDURAL BACKGROUND

In February 2002, Facundo submitted a bid to remodel Solis's home in the Travis Heights neighborhood of Austin. The parties' initial contract, for $33,950, covered the enlarging

of the house to include a master bedroom, an efficiency bathroom and a washer-dryer alcove. Facundo later contracted to upgrade Solis's kitchen for an additional $3,800. The total amount of the contracts was $37,750, and the estimated time of completion was 90 to 120 days.

Both Solis and Facundo made changes to the work covered by the contract. Due to the changes, delays caused by subcontractors, and absences by both Solis and Facundo, the project remained incomplete as of July 2003. Solis eventually terminated the project due to delays in completion and a request by Facundo for an additional $1,765 to make further changes. Facundo concedes that at the time the project was terminated, she had not corrected her subcontractors' mistakes or finished the work on the house for which she had been compensated.

After conducting a bench trial, the trial court rendered judgment for Solis. It awarded $50,525 to Solis to correct Facundo's work and complete the work that was left undone, and $15,000 for attorney's fees, for a total judgment of $65,525. The court awarded Solis more than the $37,475 that she paid to Facundo because it found that Facundo's work was substandard and would require additional work to complete and correct. Additionally, the court found that Facundo promised to complete the work within 120 days, but that the work was never completed, and that Facundo abandoned the job after 18 months. The court found that Facundo misrepresented her ability to do the job, but it found that she did not act knowingly in her misrepresentations. The court concluded that Facundo breached her contract with Solis and her implied warranty to complete the work in a good and workmanlike manner, and that Facundo's actions violated the Deceptive Trade Practices Act. *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West Supp. 2005). Despite finding a violation

of the DTPA, the court concluded that Solis was not entitled to exemplary damages. This appeal ensued.

## ANALYSIS

### *The Controversy*

In three issues, Facundo contends that the trial court erred by admitting the testimony of Solis's expert witness, Randy Meek, because he was not properly disclosed and his testimony was neither relevant nor reliable, and by rendering judgment in excess of the amount pled by Solis. Solis responds that the trial court did not err by admitting the expert testimony or by awarding damages based on his testimony, and that the parties tried the issue of damages by consent.

### *Standard of Review*

The trial court has broad discretion in determining admissibility of an expert's testimony, and we will reverse only if the trial court abuses that discretion. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556-57 (Tex. 1995). We gauge abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *Id.* at 558.

Facundo argues that because Randy Meek's expert testimony was incompetent, it cannot be considered evidence of probative force to support the judgment. Facundo further contends that, because Meek's testimony and expert reports were the only evidence of damages, Solis presented no evidence on damages. We note initially that although the case was tried to the court, we review a trial court's findings of fact by the same standards applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). After the Texas

3

Supreme Court adopted gate-keeping standards for expert testimony, evidence that failed to meet reliability standards was rendered not only inadmissible but incompetent as well. *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005). It has long been the rule in Texas that incompetent evidence is legally insufficient to support a judgment, even if admitted without objection. *Id.* at 812.

When a witness testifies in a bench trial, the trial court is the sole judge of his credibility and the weight to be given to his testimony. *Griffin Indus., Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 355 (Tex. 1996). The trial court, acting as the fact-finder, is exclusively in a position to observe the witnesses and evaluate their testimony and credibility. *Id.*

### *Non-Disclosure of Expert Witness*

Facundo asserts that because Solis's expert, Randy Meek, was not tendered for deposition, and because Facundo objected during trial that Meek did not prepare an expert report, Meek's opinions were not properly disclosed. *See* Tex. R. Civ. P. 195.3. Therefore, Facundo urges, Meek's testimony should have been excluded in its entirety. *See* Tex. R. Civ. P. 193.6.

A party may request another party to designate and disclose information concerning testifying expert witnesses through a request for disclosure under Rule 194 and through depositions and reports as permitted by Rule 195. Tex. R. Civ. P. 194, 195.1. Rule 195.3(a)(2), titled "Scheduling Depositions," states that if a party seeking affirmative relief has retained and designated an expert who has not yet furnished a report, the expert must be made available for deposition reasonably promptly after he is designated. Tex. R. Civ. P. 195.3(a)(2).

4

Appellant's claim of non-disclosure is not supported by the record. Although Facundo claims that there was no expert report, the record shows that Meek's expert report was admitted into evidence at trial, despite Facundo's objections on relevance grounds. Facundo provides only the conclusory statement, "Facundo properly objected that there was no expert report prepared by Randy Meeks, nor was he tendered for deposition, and thus his opinions were not properly disclosed as required by Tex. R. Civ. P. 195.3." Meek's identity was disclosed to Facundo in response to Facundo's request for disclosure; there is nothing in the record to show that Facundo requested any further discovery of him. Accordingly, we find that the trial court did not abuse its discretion in admitting the testimony of Solis's expert witness.

***Relevance and Reliability***

Facundo argues that because Meek's testimony was neither relevant to this case, nor based upon a reliable foundation, it cannot be considered evidence of probative force to support the judgment. It is undisputed that the fundamental requirements of relevance and reliability are applicable to expert testimony offered under Rule 702. *See* Tex. R. Evid. 702; *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 726 (Tex. 1998).

For an expert opinion to be relevant, it must be "sufficiently tied to the facts of the case." *Robinson*, 923 S.W.2d at 555-56. Evidence that has no relationship to any of the issues in the case is irrelevant and does not satisfy Rule 702's requirement that the testimony be of assistance to the jury. *Id.* at 556. Such evidence is thus inadmissible under Rule 702 as well as under Rules 401 and 402. *Id.*

5

Facundo contends that Meek's testimony regarding damages was not relevant because the project for which Meek gave his cost estimate was different than the project originally contracted for by Facundo. Facundo claims that the trial court's erroneous admission of Meek's testimony, his expert reports and his architect's plans for the remodel permitted an inflated damage award because it covered the costs of Meek's improved version of the remodel, granting a windfall to Solis.

To support her contention, Facundo cites Meek's "admissions" that his project differed from the project originally contracted for by Facundo. Facundo cites an exchange that occurred after she objected to Meek's testimony on relevance grounds. During Facundo's *voir dire* of Meek, she asked the following:

Q. Is [your bid] exactly the same as the—as the project that Ms. Facundo undertook?"

A. No.

Q. Okay. So, in fact, the bid that you—that you have in your hand is for a project different than the one that Ms. Facundo did. Correct?

A. Correct.

Q. And I'd like to show you . . . this drawing of the project of Ms. Facundo and this drawing of [your] architect. . . . Those are different projects, are they not?

A. They are. . . . Same floor plan, just different.

Q. Different projects, different specs and the whole bit, different requirements. Correct?

A. You bet.

In a later exchange, Facundo asked Meek, "[i]f Ms. Solis wanted to get what you have suggested there, she would have had to pay a lot more. Correct?" Meek responded, "Yes . . . $15,000 more." Facundo claims that Meek's testimony was an admission that his bid was more comprehensive than Facundo's. Accordingly, Facundo claims, Meek's testimony was not probative of the amount of damages owed by Facundo.

The court admitted Meek's report and his architect's plans over Facundo's relevancy objections. Facundo claimed that they were for a "totally different project," but the court disagreed, stating that, in both cases, the relevancy argument would only go "to the weight [of the evidence], not admissibility." We agree with the trial court that Meek's report and plans were probative. Meek testified that he evaluated Facundo's work at a point where any new contractor who was hired to complete the work originally contemplated by the parties' agreement would first have to undo much of Facundo's inferior work. Meek testified that Facundo's work was both inadequately designed and defectively performed, and that consequently, his estimates included the costs to redesign the job and repair the problems that Facundo had created. According to Meek, Solis's house no longer qualified as a "remodel." Meek testified that because Facundo mismanaged the remodel, contractors would now have to begin "remodeling [the] remodel," which, he testified, is often more costly than doing the job correctly in the first instance.

Although Meek's estimates for the redesign and repair of Solis's house were higher than the amount paid for the original remodel, Meek assured the court that it was based on "the exact same space." He added, "[w]e didn't branch out into any more of the house. It's just fixing—making it a working house where everything is functional." When Meek was asked during

7

his direct examination to clarify how Facundo's drawings of the project differed from those of his architect, he responded, "[Mine] would actually work. The one [Facundo] showed me was a mess from one end to the other. It was very poorly designed. Nothing worked." Meek also testified that his estimates were "as conservative as possible, considering . . . what I'm having to deal with." For these reasons, we find that the trial court did not abuse its discretion when it found that Meek's testimony was relevant when determining Solis's damage award.

Facundo also contends that Meek's testimony was not reliable because Meek did not know the contents of the original agreement between the parties and because he based his testimony on speculation and incorrect assumptions. Facundo claims that Meek admitted that he did not know the substance of the agreements or the "numerous modifications" made after work had begun on the house. As a result, Facundo asserts that Meek's testimony was merely a reflection "of what he would have done if he had gotten the original bid," at a price higher than that of the original contract.

In contrast to the relevancy requirements for expert testimony, Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions. *Id.* at 557. Under this requirement, expert testimony is unreliable if it is no more than "subjective belief or unsupported speculation." *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)). Expert testimony is also unreliable if there is too great an analytical gap between the data the expert relies upon and the opinion offered. *Gammill*, 972 S.W.2d at 727. In applying this reliability standard, however, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines whether the analysis used to reach those conclusions is reliable. *Id.* at 728.

8

The parties agree that at the time Meek was hired, the written bids could no longer be used to ascertain the terms of the agreement between the litigants. A primary reason was that Facundo did not itemize many of the costs in her estimates: her original bid included a single line-item of $27,460 for creating an addition to the back of Solis's house that would include a master bedroom and efficiency bathroom. The writings between the parties were further complicated by additional agreements that were vague and incomplete and by subsequent oral modifications to those agreements.

Solis testified that while Meek inspected her home, she showed him Facundo's repair work. Meek testified that this inspection allowed him to determine the extent of Facundo's work. When Meek was asked about his bid, totaling $50,525, he responded, "I was asked to fix only the problems that were necessary . . . ." He testified that the "necessary" problems were only those related to Facundo's work. Meek testified at length about the bid, which he calculated by incorporating detailed estimates from tradesmen familiar with the project. Meek also reviewed and testified about the expert report of Robert Welborn, a certified professional real estate inspector, who evaluated Facundo's work and concluded that, "[t]he overall quality of the work was inferior and failed to meet accepted trade standards for good and workmanlike construction."

Facundo also contends that Meek's estimates were speculative and his opinions were, therefore, unreliable. Facundo cites Meek's uncertainty about additional problems he might encounter when he commenced working on the house. Meek testified that when a remodeling job is conducted in an unprofessional and inferior manner, many of the problems with the work will not be immediately visible. For example, Meek testified that he would not know how to fix a large crack

9

in the ceiling until he removed the framing to determine its cause. Meek testified that his cost estimates were based on "best probability," which was determined during his observations and aided by his considerable experience, training and skill.

Facundo claims that Meek's testimony that the washer and dryer could not be removed from the washer-dryer alcove was additional evidence of Meek's speculation. Facundo contrasts this with her own testimony that, "[t]here is a way to pull it out. You have to pull out the dryer first and then the washer. It is very difficult. It is very compressed . . . ." Meek, however, testified that he made this observation while inspecting Solis's house. Meek also testified, and Facundo's testimony supports, that the workmanship on the washer-dryer alcove would not be acceptable within the industry.

Accordingly, we cannot say that the trial court abused its discretion when it determined that Meek's testimony, based on first-hand observations and accompanied by the knowledge and experience of his subcontractors and an outside expert, was reliable. Because the testimony was properly admitted, it could be considered probative evidence on which to base a judgment favoring Solis. As a result, we need not consider Facundo's arguments that there is no evidence of other damages to support the trial court's $50,525 damage award.

We overrule Facundo's first and third points of error.

### *Judgment in Excess of Amount Pleaded*

In her second point of error, Facundo raises for the first time the argument that the judgment does not conform to the pleadings. *See* Tex. R. Civ. P. 301. Facundo contends that the

trial court erred by rendering judgment in excess of the amount specifically pled by Solis, and that she was entitled to rely on Solis's original petition, which stated, "[i]t will take $35,000.00 to remedy the defects caused by Defendant's faulty construction." Solis contends that Facundo did not preserve this point because she did not object to the testimony of amounts over $35,000 or move for new trial on the ground that the judgment was in excess of the amount pleaded.

We agree that a judgment cannot be rendered for an amount greater than the amount pleaded, but this proposition has no application here because it may be waived.[1] *See William S. Baker, Inc. v. Sims*, 589 S.W.2d 492, 493 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). To preserve this argument for appeal, Facundo had to present this complaint to the trial court (i) by motion to limit the judgment to the amount pleaded, (ii) exception to the amount of the judgment, or (iii) motion for new trial. *Baker*, 589 S.W.2d at 493; *see also Pipgras v. Hart*, 832 S.W.2d 360, 367 (Tex. App.—Fort Worth 1992, writ denied); *Winkle Chevy-Olds-Pontiac v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd); *First Nat'l Indem. Co. v. First Bank*, 753 S.W.2d 405, 407 (Tex. App.—Beaumont 1988, no writ). Accordingly, we hold that Facundo waived error by failing to present the question to the trial court in a manner which would require a definite ruling. We overrule Facundo's second point of error.

---

[1] The two Texas Supreme Court cases that Facundo cited involve default judgments, where there was no contested hearing and no possibility of trial by consent. *See Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986); *Mullen v. Roberts*, 423 S.W.2d 576, 579 (Tex. 1968).

## CONCLUSION

Having overruled Facundo's issues, we hold that the trial court did not err in admitting the expert testimony, nor in awarding damages based on his testimony, and that Facundo waived the argument that the judgment does not conform to the pleadings. We affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:  January 12, 2006