331 S.W.3d 426 (2011)
In the Interest of C.H.C., a child.
No. 09-0480.
Supreme Court of Texas.
January 28, 2011.
Christina Hawkins, Richardson, TX, pro se.
Graham Baker, The Law Office of Graham Baker, PLLC, San Antonio, TX, for Christina Hawkins.
Kyle Corey, Dallas, TX, pro se.
*427 PER CURIAM.
When a pro se party seeks to appeal a trial court's decision and properly files a sufficient and unchallenged affidavit establishing indigency and requesting a free record on appeal, the Texas Rules of Appellate Procedure mandate that the party be provided the record. Because the affidavit in this case was not timely challenged, we reverse the court of appeals' dismissal of this appeal and remand the case to the court of appeals for further proceedings.
Petitioner Christina M. Hawkins and Respondent Kyle Van Corey[1] are the parents of C.H.C. In 2004, a Dallas County trial court entered an order modifying the parent-child relationship for C.H.C. by recognizing Corey's paternity, appointing Hawkins as Sole Managing Conservator and Corey as Possessory Conservator over C.H.C, and requiring Corey to pay child support.[2] Thereafter both parties brought contempt and modification actions, each alleging violations of the 2004 order by the other. Among other things, Corey alleged that Hawkins denied him visitation rights with C.H.C. on two separate Thursday afternoons. Hawkins complained that Corey was also not complying with the 2004 order, noting his conviction for interfering with child custody, her $5,000 judgment against him for malicious prosecution, and his alleged arrearage in child support payments. The trial court held a bench trial on the cross-motions, with Corey proceeding first. According to Hawkins, the trial court set a time limit of six hours of evidence, only one and a half hours of which were allotted to Hawkins. After receiving evidence at the hearing, the trial court modified the custody order and held Hawkins in contempt of court for violating the orders for Corey's visitation. On September 23, 2008, the trial court signed a contempt order.[3] The next day Hawkins, through counsel, filed a motion to modify the judgment, arguing among other things that the trial court did not provide sufficient time for her to present proof challenging alleged violations of the visitation order and that the documentary evidence she provided conclusively proved she had not violated the order.
On October 15, 2008, Hawkins filed an affidavit of indigence for appeal. The affidavit alleged that Hawkins was unemployed "due to company layoff"; had no investments, real estate, property or retirement; received $1200 per month in child support; had a small amount of cash on hand, had a total debt of approximately *428 $50,000; and had $3500 in monthly expenses. Hawkins did not attach any documentary evidence to the affidavit. No eligible party filed any contest to the affidavit within ten days. See TEX.R.APP. P. 20.1(e) (providing that "[t]he clerk, the court reporter, the court recorder, or any party may challenge an affidavit" of indigence by filing a contest within "10 days after the date when the affidavit was filed. . ."). In November, Hawkins' counsel withdrew. On December 1, 2008, Hawkins filed motions "to Confirm Indigency," and for a court-appointed public defender on appeal, along with a notice of appeal and request for new trial. Even though no party filed a contest to Hawkins' first affidavit, on December 10, the trial court held a hearing on Hawkins' indigence petition. Corey's counsel filed a brief in opposition to Hawkins' indigence petition, served, according to Hawkins, on the morning of the hearing. Two days later, Hawkins filed an expanded, amended affidavit of indigence, including attachments demonstrating that she was receiving governmental assistance. No contest was filed within ten days to the second affidavit. On December 29, 2008, the trial court entered an order denying Hawkins' indigence, confirming the proposed order modifying the parent-child relationship, incorporating the previous contempt order, and denying all other relief.
On January 27, 2009, Hawkins filed a petition for writ of mandamus with the court of appeals, which it reclassified as an accelerated appeal, along with her December 12, 2008 affidavit of indigence.[4] On February 23, 2009, the court of appeals forwarded Hawkins' motion to proceed without costs back to the trial court providing ten days for any party to contest the claim of indigence, stating that it was "unclear" whether any affidavit of indigence was filed at the trial court.
On March 2, only the district clerk contested the notice, and the trial court held another indigence hearing. At the hearing, the clerk did not submit any evidence, but instead argued that the affidavit did not comply with Texas Rule of Appellate Procedure 20.1. According to the clerk, the affidavit was not specific enough in detailing Hawkins' monthly expenses and because the affidavit's listing of certain medical and child care expenses was undercut by Hawkins' admission that she received Medicaid and that she is C.H.C.'s primary caregiver. The clerk also argued a transcript was unnecessary because no substantial question for appellate review was presented. Hawkins challenged the clerk's statements, arguing that she placed sufficient evidence in the record and that the clerk's contest was untimely. The trial court again held that the appeal was frivolous, that Hawkins' affidavit was "insufficient/incomplete," and that Hawkins was not indigent. Hawkins filed objections to the ruling, stating that the clerk did not serve Hawkins, she learned of the hearing "through another party," and the clerk's contest was not timely filed. No action was taken on the objections. The court of appeals then entered an order requiring Hawkins to pay for the record and costs of appeal and, when she was unable, eventually entered judgment dismissing her appeal.
Before this Court, Hawkins argues that she is entitled to a free record *429 and court-appointed counsel on appeal. Courts should be open to all, including those who cannot afford the costs of admission. E.g., TEX. CONST. art. I, § 13; Higgins v. Randall Cnty. Sheriff's Office ("Higgins II"), 257 S.W.3d 684, 686 (Tex. 2008) (citations omitted); Griffin Indus., Inc. v. Thirteenth Court of Appeals, 934 S.W.2d 349, 353 (Tex.1996) (citations omitted); Pinchback v. Hockless, 139 Tex. 536, 164 S.W.2d 19, 19-20 (1942) (citations omitted). Thus, parties who establish their indigency and have a potentially meritorious appeal are entitled to a free record for the appeal and to have their appellate costs waived. "The test for determining indigence is straightforward: `Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?'" Higgins II, 257 S.W.3d at 686 (quoting Pinchback, 164 S.W.2d at 20).
An indigent party seeking to appeal without paying costs must follow the requirements of Texas Rule of Appellate Procedure 20.1 to acquire the record for appeal. The rule requires that the party provide an affidavit of indigence "with or before the notice of appeal" or "with or before the document seeking relief" in mandamus or other proceedings, and enumerates twelve items of financial information that the affidavit must contain. TEX.R.APP. P. 20.1(b), (c)(1), (c)(2).[5] However, if the affidavit provides sufficient information to prove by a preponderance of evidence that the party is unable to pay costs on appeal, the affidavit is sufficient, even if information on each of the twelve items is not included. Higgins II, 257 S.W.3d at 688-89.
Once an affidavit is filed, "[t]he clerk, the court reporter, the court recorder, or any party may challenge an affidavit" of indigence by filing a contest within "10 days after the date when the affidavit was filed" if the affidavit was filed in the trial court, or as set by the court of appeals if the affidavit is filed there. TEX.R.APP. P. 20.1(e). If a contest is timely filed, then the trial court must provide notice and set a hearing to determine whether the party is indigent. TEX.R.APP. P. 20.1(i). The party filing the affidavit has the burden of proving the affidavit's allegations. TEX. R.APP. P. 20.1(g). However, if no contest to the affidavit is filed, "no hearing will be conducted, the affidavit's allegations will be deemed true, and the party will be allowed to proceed without advance payment of costs." TEX.R.APP. P. 20.1(f). If an affidavit is defective in some way, an appellate court may dismiss the appeal for noncompliance only after notice and a period of time for the party to correct the defect. TEX.R.APP. P. 44.3; Higgins v. Randall Cnty. Sheriff's Office ("Higgins I"), 193 S.W.3d 898, 899-900 (Tex.2006).
*430 In this case, Hawkins filed her first affidavit on October 15, 2008. The sworn affidavit contained statements that Hawkins was unemployed "due to company layoff"; had no investments, real estate, property or retirement; received $1200 per month in child support; had a small amount of cash on hand, had a total debt of approximately $50,000; and had $3500 in monthly expenses. Although Hawkins did not attach any documents to her affidavit and not every factor in Rule 20.1(b) was mentioned, Hawkins swore that she had a negative cash flow, no investments to help pay for the record, no cash on hand, and a dependent to take care of. Taking as true the allegations in the affidavit, which is required under our rules, see TEX.R.APP. P. 20.1(f), the preponderance of the evidence from Hawkins' affidavit clearly indicates that she would be unable to afford the costs of appeal.
Even if Hawkins' October 15 affidavit were deemed too conclusory, following the hearing, Hawkins filed an amended affidavit in the trial court. See Higgins I, 193 S.W.3d at 899-900 (recognizing that an appeal may not be dismissed for an inadequate affidavit until the party has had an opportunity to correct the defect). The amended affidavit includes all of the information from the first affidavit but provides more information about most entries such as the nature of Hawkins' debt and her child care costs, takes issue with the trial court's findings of fact, and attaches proof that she received Children's Health Insurance Program and Food Stamps benefits from the Texas Health and Human Services Commission. No party challenged the second affidavit within ten days of its filing in the trial court.[6] A contest was finally filed nearly three months later, after the court of appeals remanded the case for a hearing. The affidavit demonstrates that Hawkins was indigent, and when no contest had been filed, the trial court hearing was not necessary, and it erred in denying Hawkins a free record on appeal.[7]
*431 Hawkins also argues that because the contempt judgment included a suspended sentence of incarceration, she has a right to appointed counsel to challenge that sentence on appeal. The court of appeals did not address this argument, and we remand the case for the court of appeals to consider that argument prior to addressing the merits of the appeal. See Dealers Elec. Supply Co. v. Scoggins Constr. Co., 292 S.W.3d 650, 660 (Tex.2009); Little v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374, 384 (Tex.2004) (citation omitted) (both remanding cases for the court of appeals to consider remaining issues preserved but previously unaddressed by the court of appeals); TEX.R.APP. P. 53.4.
Because Hawkins established her indigence demonstrating her inability to pay costs on appeal, Hawkins was entitled to proceed with the appeal without costs. The court of appeals erred in dismissing her appeal for Hawkins' failure to pay the docketing fee and provide a record. Therefore, without hearing oral argument, TEX.R.APP. P. 59.1, we reverse the court of appeals' judgment and remand to the court of appeals with instructions to accept Hawkins' appeal without payment of the filing fee, order the preparation of Hawkins' record at no cost, and consider the appeal on its merits.
NOTES
[1] Hawkins was appointed counsel for her Petition through this Court's Pro Bono Pilot Project. After filing a response to Hawkins' Petition for Review, Corey did not file a brief on the merits and informed the Clerk of this Court that he had no intention of further participating in this matter.
[2] The record evidence provided by Hawkins is not from the clerk's record below, because Hawkins claims that she cannot afford the $ 1 per page fee for a certified record. She included an affidavit, attesting that her filings in this Court were copies of the documents she originally filed in the trial court. There is no assertion that the documents are not true and correct, and we consider them for purposes of this appeal.
[3] The order sentenced Hawkins to two concurrent sentences of 90 days in jail, suspended so long as she paid a fine to the county, complied with all court orders, reported monthly to the Domestic Relations office to pay a $25 per month fee, and paid Corey's attorney fees. On December 4, 2008, the trial court suspended Hawkins' commitment to jail and placed her on community supervision for 36 months, provided that Hawkins complied with the other terms of the judgment, including payment of $1500 to Corey's counsel for attorney fees. There is nothing further in the record to indicate whether Hawkins has complied or whether she faces incarceration.
[4] The record does not indicate why the court of appeals classified her petition as an accelerated appeal. There was no objection to this classification, and on July 28, 2009, the court of appeals entered a judgment dismissing Hawkins' appeal. Because the trial court order that Hawkins challenges is a final judgment, we treat Hawkins' petition to this Court as a petition for review.
[5] The twelve requirements are:

(1) the nature and amount of the party's current employment income, government-entitlement income, and other income; (2) the income of the party's spouse and whether that income is available to the party; (3) real and personal property the party owns; (4) cash the party holds and amounts on deposit that the party may withdraw; (5) the party's other assets; (6) the number and relationship to the party of any dependents; (7) the nature and amount of the party's debts; (8) the nature and amount of the party's monthly expenses; (9) the party's ability to obtain a loan for court costs; (10) whether an attorney is providing free legal services to the party without a contingent fee; (11) whether an attorney has agreed to pay or advance court costs; and (12) if applicable, the party's lack of the skill and access to equipment necessary to prepare the appendix, as required by Rule 38.5(d).
TEX.R.APP. P. 20.1(b).
[6] Hawkins filed both of her affidavits with the clerk of the trial court. She candidly admits that there is no evidence in the record to indicate that the clerk served the affidavit on the court reporter, court recorder, or others who may challenge the affidavit. However, the rule does not require that the indigent party serve the court reporter, or the court recorder, but rather that the trial court "clerk must promptly send a copy of the affidavit to the appropriate court reporter." TEX.R.APP. P. 20.1(d). No party has argued that lack of timely notice precluded them from timely contesting Hawkins' affidavit of indigence.
[7] Below, Hawkins argued that her introduction of evidence that she receives public assistance conclusively proves that she is entitled to a free record on appeal, citing Texas Rule of Civil Procedure 145. That rule, relating to costs and fees at the trial court, defines a "party who is unable to afford costs" as "a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs." TEX.R. CIV. P. 145(a). We have in the past noted that the standard to prove indigency on appeal "is met . . . by proof that the appellant depends on public assistance." Griffin Indus., Inc., 934 S.W.2d at 351; see also id. at 352-53 (recognizing that once a party has established that she relies on public assistance, "opposing parties bear the burden of introducing some evidence that the witness is not dependent on [public assistance] or that other funds are available" (citations omitted)). However, the plain text of the appellate rule, which requires a separate affidavit of indigence from the affidavit to proceed without payment of costs in the trial court, does not contain the broad definition found in Civil Rule 145. TEX.R.APP. P. 20.1(a)(2); Higgins II, 257 S.W.3d at 686 (recognizing that, unlike the federal system, Texas requires a separate indigence proceeding on appeal). We need not determine whether the standard mentioned in Griffin and present in Civil Rule 145 also applies to our new Appellate Rule 20.1, as the affidavits submitted by Hawkins clearly show that Hawkins has no money to pay the costs of an appeal, assets from which to procure the funds, or is being represented by counsel who will advance costs.

Likewise, Hawkins argues that, during the second indigency hearing, the clerk failed to rebut the presumption of indigency because the clerk, represented by the district attorney, did not provide any evidence to contradict Hawkins' sworn statements and reliance on public assistance, but provided mere argument about the specificity of the amount of some expenses. Because we hold that the trial court did not need to conduct a hearing in the first instance, we need not address the sufficiency of the district clerk's submissions contesting the affidavit.