NO. 07-10-00205-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 15, 2011

HAROLD F. EGGERS, JR., APPELLANT

v.

JOHN TOWNES VAN ZANDT, II, WILLIAM VINCENT VAN
ZANDT, K. B. V. Z., A MINOR BY AND THROUGH HER
NEXT FRIEND JEANENE VAN ZANDT, JEANENE VAN
ZANDT, AND TVZ RECORDS, LLC, APPELLEES

FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1GN-06-01169; HONORABLE GISELA D. TRIANA-DOYAL, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Harold F. Eggers, Jr. sought to proceed on appeal without advance payment of costs by filing an affidavit of indigence. Appellees[1] contested the affidavit

---

[1] Eggers' affidavit of indigence was challenged by the court reporter, LaDelle Abilez, the plaintiffs in the underlying litigation John Townes Van Zandt, II, William Vincent Van Zandt, Katie Belle Van Zandt, a minor, by and through her next friend Jeanene Van Zandt, Jeanene Van Zandt, and third-party defendant TVZ Records, LLC. Throughout this opinion the contestants of Eggers' affidavit of indigence are collectively identified as "appellees" and the plaintiffs in the underlying litigation are collectively identified as "the Van Zandts."

and the trial court sustained the contest. On Eggers' appeal, we find the trial court did not abuse its discretion by sustaining the contest, and will affirm its order.

Background

The Van Zandts sued Eggers for declaratory relief and damages on claims arising from the ownership of rights to sound recordings of the late musician, John Townes Van Zandt. The case was tried to a jury which found in favor of the Van Zandts. The court signed a money judgment on December 15, 2009.[2] Following the completion of trial but before judgment, Eggers filed for relief under Chapter 13 of the United States Bankruptcy Code.[3] His Chapter 13 plan was confirmed by order of the bankruptcy court.

Meanwhile, Eggers filed a notice of appeal of the December 2009 judgment in the underlying case. He qualified for pro bono appellate representation by a volunteer attorney through a program of the Appellate Law Section of the State Bar of Texas. At the hearing on appellees' contest, Eggers testified the estimated total cost of the reporter's record and the clerk's record is $8,500. Egger's pro bono counsel testified neither he nor his firm agreed to advance or pay Eggers' costs on appeal. The trial court sustained the contest and Eggers challenges the order through this separate

---

[2] The Van Zandts' suit against Eggers bore trial court cause number D-1-GN-06-00169 in the 345th District Court of Travis County. In this court, its appeal carries appellate case number 07-10-0109-CV.

[3] 11 U.S.C. § 1301, *et seq.*

appeal.  For this appeal, we ordered preparation of a record limited to the indigence proceedings.[4]  Findings of fact and conclusions of law were not requested or filed.[5]

Analysis

Eggers presents one issue through which he argues the trial court abused its discretion in sustaining appellees' contest.  In support, he specifically contends his evidence of entitlement to veterans' disability benefits was prima facie proof of indigence which went unrebutted; his affidavit and hearing evidence established indigence; and his qualification for pro bono representation through the volunteer attorney program established indigence "as a matter of law."

On appeal of an order sustaining a challenge to an affidavit of indigence, we review the trial court's ruling under the abuse of discretion standard.  *White v. Bayless,* 40 S.W.3d 574, 576 (Tex.App.--San Antonio 2001, pet. denied).  A trial court abuses its discretion if it acts without reference to any guiding rules or principles; in other words, we must decide whether the decision of the trial court was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

---

[4] An appellate court may on its own initiative apply Rules of Appellate Procedure 34.5(c)(1) and 34.6(d) to obtain preparation by the clerk and court reporter of the portions of record necessary to review an order denying indigence status.  *In re Arroyo,* 988 S.W.2d 737, 739 (Tex. 1998) (orig. proceeding); *Kastner v. Texas Board of Law Examiners,* No. 03-08-00515-CV, 2009 Tex. App. Lexis 6381, at *3 n.5 (Tex.App.-- Austin August 12, 2009, no pet.) (mem. op.) (citing *In re Arroyo*); Tex. R. App. P. 34.5, 34.6.

[5] The present appeal and the underlying case were transferred to this court from the Third Court of Appeals by docket equalization order of the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001 (West 2005).

"A party who cannot pay the costs in an appellate court may proceed without advance payment of costs if the party files an affidavit of indigence in compliance with [Rule of Appellate Procedure 20.1]; the claim of indigence is not contestable, is not contested, or, if contested, the contest is not sustained by written order; and the party timely files a notice of appeal." Tex. R. App. P. 20.1(2). When a contest is filed, it is the burden of the party filing an affidavit of indigence to prove the affidavit's allegations. Tex. R. App. P. 20.1(g). "The test for determining indigence is straightforward: Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?" *Higgins v. Randall County Sheriff's Office,* 257 S.W.3d 684, 686 (Tex. 2008) (internal quotation marks omitted, citing *Pinchback v. Hockless,* 139 Tex. 536, 539, 164 S.W.2d 19, 20 (Tex. 1942)).

Receipt of Veterans' Disability Payments

Eggers testified he is a military veteran and has received veterans' disability benefits since 1972. His initial 10 percent permanent disability rating was later increased to 50 percent. According to Eggers, he receives disability benefits for anxiety and a retention disorder. He added that his retention capacity is "almost gone."

Rule of Civil Procedure 145, governing affidavits of indigency in the trial courts, defines a "party who is unable to afford costs" as "a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs." Tex. R. Civ. P. 145. In cases under former Rule 40 of the Rules of Appellate Procedure, courts also found that indigence was demonstrated by a showing of

4

dependence on public assistance. *See Griffin Indus. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 351 (Tex. 1996). "The fact that any individual is dependent upon the charity of the public afforded through the various welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs or give security therefor." *Id.* (quoting *Goffney v. Lowry,* 554 S.W.2d 157, 159-60 (Tex. 1977)).

Recently, the Supreme Court of Texas has pointed out that the current appellate procedure rule on indigency in civil cases, Rule 20.1, "does not contain the broad definition found in Civil Rule 145." *In re C.H.C.,* 331 S.W.3d 426, 430 n.7 (Tex. 2011). The court went on to state that the case before it did not require a determination "whether the standard mentioned in *Griffin* and present in Civil Rule 145 also applies to our new Appellate Rule 20.1." *Id.*

A claim for veterans' disability benefits requires establishment of five elements: (1) veteran status; (2) existence of a disability; (3) service connection of the disability; (4) degree of disability; and (5) effective date of the disability. *Maggitt v. West,* 202 F.3d 1370, 1375 (Fed. Cir. 2000); *see* 38 U.S.C.A. § 1110 (West 2002) (setting forth the basic requirements for compensation for a disability resulting from active military service during a period of war); 38 U.S.C.A. § 1131 (West 2002) (setting forth the basic requirements for a disability resulting from active military service during other than a period of war). The veteran must have been "discharged or released under conditions other than dishonorable." 38 U.S.C.A. § 1110; 38 U.S.C.A. § 1131.

For demonstrating indigence based on receipt of public assistance or charity, we find a material distinction between dependence on a public charity and dependence on

disability benefits. Receipt of need-based public assistance means the party asserting indigence on appeal has met the qualifying standard of a government agency or program for receipt of need-based benefits. *Cf.* Tex. R. App. P. 20.1(a)(1) (affidavit of party meeting rule's criteria, including screening and rescreening by designated programs, may not be contested). Civil Rule 145 speaks of "governmental entitlement based on indigency." Tex. R. Civ. P. 145. Entitlement to veterans' disability benefits is not based on the applicant's indigency.

Assuming the standard previously noted in *Griffin* and Rule of Civil Procedure 145 also applies to Rule of Appellate Procedure 20.1, a question we also need not address, we conclude Eggers did not make prima facie proof of indigence merely by proving his receipt of veterans' disability benefits.

Proof of Indigence by Affidavit and Hearing Evidence

At the hearing on appellees' contest, Eggers presented evidence of his financial condition. His veterans' disability payment amounts to $770 per month. He also earns $150 per week straightening displays for an Austin newspaper. For nine weeks during 2009, he did "computer work" for an individual. He was terminated from this position, however, as he was unable to perform the work. Between the computer work and his newspaper position, Eggers earned $6,600 in 2009. At the conclusion of the hearing, Eggers was permitted to address the court. In his narrative, among other things Eggers explained, "I'm in the music business. We work on spec." He added that he makes "record deals" which require three years to complete.

6

Eggers owns a condominium, free of encumbrance, which he valued at $63,000. He testified this property was originally purchased with proceeds of a loan made by his parents and was at times titled to his parents or his sister to prevent him from selling or encumbrancing the dwelling. Eggers owns a 2003 Toyota Matrix automobile. The vehicle has been driven 130,000 miles and requires repairs he said would cost in the "range of two thousand dollars." He also expressed the opinions his assets[6] are "really not worth anything," and any attempted sale would require approval of the bankruptcy court. Eggers testified his monthly income is $1,370.

Eggers' affidavit listed monthly expenses totaling some $1325. Additionally, Eggers' monthly plan payment in bankruptcy is $201.88. At the time of the hearing, Eggers had not been ordered to make regularly scheduled child support payments for his minor son nor did he voluntarily make such payments.

Eggers' bankruptcy schedules were appended to his affidavit of indigence. There, he itemized his personal property and valued it collectively at $33,556.17. He listed "accounts receivable" described as "[m]onies owed by TVZ records" as a property item. He valued the receivables at $15,269.[7] Eggers listed a "50% interest in copyrights to Townes Van Zandt recordings[,] Townes Van Zandt CD documentary [, and] Richard Dobson CD--Mankind." According to the schedule, Eggers does not have

---

[6] Apparently, excluding his condominium.

[7] Also in a bankruptcy schedule, Eggers identified "Jeanene Van Zandt, et al" (sic) as creditors of a disputed $300,000 claim partially collateralized by monies ($15,269.17) owed him by TVZ Records. According to the judgment in the main case, the trial court "made no determination concerning any offset or recoupment issues, and the Parties are free to seek disposition of these issues in [Eggers'] bankruptcy proceeding."

7

an appraisal of these assets but values them at $1,000. Eggers listed an interest in "Donovan/Eggers Music," with the explanation "no present income," and an interest in a book valued at "$200/year for 10 years/$100 year for 20 years." Eggers values these two assets at $2,000 apiece although he testified neither is "worth anything" and the book "had already had its day."

There was no evidence Eggers attempted to raise cash from his personal property for payment of the reporter's record. While the overarching fact that Eggers is a Chapter 13 debtor sounds generally synonymous with insolvency, specific facts demonstrating how his Chapter 13 plan could stymie an effort to generate funds for payment of the record, either by asset liquidation or obtaining credit, were not presented to the trial court. Along with Eggers' testimony attributing little or no value to his business assets, the trial court also was faced with his bankruptcy schedules in which he swore to the values we have noted.

As appellees point out, Eggers owns a condominium and personal property he valued in excess of $33,000. Even with his Chapter 13 plan payment, Eggers presents a positive monthly cash flow and offered no proof why some of his monthly expenses could not be further reduced. *Cf. Morris v. Aguilar,* No. 03-08-0078-CV, 2010 Tex. App. Lexis 5365, at *9-*11 (Tex.App.--Austin July 9, 2010, pet. filed) (questioning why appellant and her husband could not further reduce expenses, including some related to husband's deafness, and holding trial court did not abuse its discretion in denying free record on appeal even though appellant presented a negative monthly cash flow).

The trial court was the sole judge of the credibility of the witnesses and the weight assigned their testimony. *In re T.E.G.,* 222 S.W.3d 677, 679 (Tex.App.--Eastland 2007, no pet.) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 821-28 (Tex. 2005)). There is no abuse of discretion if the trial court bases its decision on conflicting evidence and, as here, some evidence supports its decision. *In re Barber,* 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). And we may not reverse the trial court's decision simply because we might have reached a different result. *Downer,* 701 S.W.2d at 242. We are unable to see an abuse of discretion in the trial court's evaluation of the evidence before it. Tex. R. App. P. 20.1(g); *Higgins,* 257 S.W.3d at 686.

Participation in Pro Bono Program

Finally, Eggers asserts because he is represented by pro bono counsel as part of the State Bar of Texas Appellate Section's pro bono program he is entitled to a free record as a matter of law. Eggers concedes, however, this is not the law. He nevertheless asks that we extend the law so that he is accommodated.

The website of the Appellate Section indicates it sponsors a pro bono pilot program in the Third Court of Appeals. *See* http://www.tex-app.org/probono.php. According to the Third Court of Appeals' *Pro Bono Pilot Program Pamphlet* (09/01/07) (available at: http://www.tex-app.org/pamphlet), the program's goal "is to match clients who are financially unable to obtain legal representation with volunteer lawyers who agree to serve without expectation of compensation for their service." A party with retained counsel in the trial court may qualify for the program if he can no longer afford an attorney. A "significant factor" in qualifying a program applicant is his ability to pay

9

for legal services although the screening committee considers such other factors as current program case volume, the number of available volunteer attorneys, and issues presented by the appeal. The screening committee applies 175% of the poverty guidelines published by the United States Department of Health and Human Services as a benchmark for determining whether an applicant qualifies for free legal services. Of these facts concerning the pilot program, we take judicial notice on our own initiative. *See* Tex. R. Evid. 201(b)(2), (c), (f) (at any stage of proceeding, court in its discretion and on its own motion can take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

Rule of Appellate Procedure 20.1 provides in part:

> If the appellant proceeded in the trial court without advance payment of costs pursuant to a certificate under Texas Rule of Civil Procedure 145(c) confirming that the appellant was screened for eligibility to receive free legal services under income guidelines used by a program funded by Interest on Lawyers Trust Accounts or the Texas Access to Justice Foundation, an additional certificate may be filed in the appellate court confirming that the appellant was rescreened after rendition of the trial court's judgment and again found eligible under program guidelines. A party's affidavit of inability accompanied by the certificate may not be contested.

Tex. R. App. P. 20.1(a)(1). The record contains no indication Eggers proceeded in the trial court without advance payment of costs under a Rule of Civil Procedure 145(c) certificate. There is also no indication the program through which Eggers was matched with his appellate counsel is an Interest on Lawyers Trust Accounts program or Texas Access to Justice Foundation program. As is apparent, factors beyond poverty may favor an applicant's acceptance by the pilot program. And we are not shown that the

10

income guidelines applied by the pilot program mirror those of the programs Rule 20.1(a)(1) specifies. We conclude it is not possible to bring the pro bono appellate representation the pilot program is providing Eggers within the ambit of Rule 20.1(a)(1).[8]

In that regard, and especially considering that Eggers' appeal originated in the Third Court of Appeals, we take note of that court's opinion in *Morris*, 2010 Tex. App. Lexis 5365. While the effect of participation in the Third Court of Appeals' pro bono pilot program was not at issue in *Morris*, the appellant there testified that she and her husband qualified for the program; yet, the appellate court affirmed the trial court's order sustaining the court reporter's contest of the appellant's affidavit of indigence. *Morris,* 2010 Tex. App. Lexis 5365, at *7, *11.

While we commend counsel's willingness to provide pro bono legal services for Eggers, and find the Appellate Section's pilot pro bono program laudable, we are not authorized to stretch the bounds of Rule 20.1(a)(1) to include it.

Finding none of Eggers' appellate contentions persuasive, we overrule his sole issue on appeal.

---

[8] Rule of Appellate Procedure 2 authorizes us on motion or our own initiative to suspend a rule's operation in a particular case and order a different procedure, "to expedite a decision or for other good cause." Tex. R. App. P. 2. We will not invoke Rule 2 here.

Conclusion

Because we find the trial court did not abuse its discretion in sustaining appellees' contest of Eggers' affidavit of indigence and Eggers is not otherwise entitled to a free record on appeal, we affirm the trial court's order.


James T. Campbell
Justice

12