**Order issued September 19, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00287-CV

———————————

### XOCHYTL DIANE GREER, Appellant

### V.

### WESLEY MICHAEL MELCHER, Appellee

---

**On Appeal from the 245th District Court
Harris County, Texas
Trial Court Case No. 2017-41808**

---

### MEMORANDUM ORDER

Appellant, Xochytl Diane Greer, has filed a notice of appeal of the trial court's

second reformed order adjudicating parentage in a suit affecting the parent-child

relationship. And Greer has filed a motion for review of the trial court's order

sustaining court reporter Barbara K. Nagji's motion challenging Greer's Statement

of Inability to Afford Payment of Court Costs or an Appeal Bond (the "Statement").[1]
In her sole issue, Greer contends that the trial court erred in sustaining Nagji's motion.

We grant Greer's motion for review and reverse.

## Background

Greer filed suit to establish the parent-child relationship between her minor child, I.G.M., and appellee, Wesley Michael Melcher, and to provide for conservatorship, visitation, and support. After a three-day hearing, the trial court signed an order adjudicating parentage in a suit affecting the parent-child relationship and later signed a second reformed order adjudicating parentage. Greer filed a notice of appeal.

Greer also filed her sworn Statement asserting that she could not "afford to pay court costs."[2] In her Statement, she listed her two children, I.G.M. and K.G., and a nephew, B.S., as "[t]he people who depend[ed] on [her] financially." She stated that her "monthly income" was $8,258, which included "monthly wages" of $4,408 that she received from her work as an attorney and $3,850 in child support payments; she did not receive any income from "[t]ips" or "bonuses"; and her property was valued at "-$3,000[]," which included a sport utility vehicle ("SUV")

---

[1]    *See* TEX. R. CIV. P. 145.

[2]    *See id.* 145(a), (e).

valued at "-$5[,]000[]" and a "[r]esidental [h]ome" valued at $2,000.[3] The value of

any cash, bank accounts, or "other financial assets" was listed as "$0." The

Statement also showed that Greer's total monthly expenses were $8,390, which

included "[d]ebt payments" of $1,224 for "[c]redit card [debt]," and $701 for

"[s]tudent [l]oan [debt]." Greer further stated that her debts included "[s]tudent

loan[] [debt], car [debt], [and] credit card[] [debt] which [had] mostly accumulated

due to th[e] case being in litigation in excess of two years and [Greer] having to put

attorney's fees on credit cards."

Court reporter Nagji filed a motion to require Greer to pay costs, asserting, in

part, that "the testimony and evidence presented during the trial in th[e] case would

show that . . . Greer [was] not indigent."[4] The trial court then held a hearing on

Nagji's motion at which Greer was the only witness to testify and during which no

exhibits were admitted.[5]

At the hearing on Nagji's motion, Greer testified that she "believe[d] [her

Statement] to be accurate at the time [that she] filed it," but she also "believe[d] [that

---

3        The "Statement" defines "[t]he value" as "the amount [an] item would sell for less
         the amount [an individual] still owe[s] on it, if anything."

4        *See id.* 145(f)(3). The appellate record filed in this Court reflects that Rachel Dutton
         was the court reporter for the three-day hearing in Greer's suit affecting the
         parent-child relationship. The record does not reflect that she filed a challenge to
         Greer's Statement.

5        *See id.* 145(f)(5).

3

she had] rushed it so there [were] some missing elements to it." As to the "missing elements," she explained that she owned "a second [car] . . . a Chevy truck," with a current value of "[p]robably $15,000" and "an outstanding debt on it equal to the [truck's] value," and that she had "fail[ed] to include [on the Statement] a $300 car payment" for the Chevy truck. The monthly car payment in the amount of $912, which she had included as an expense on the Statement, was her monthly payment for the SUV that she drove and had purchased in December 2017. When asked if she had "considered purchasing a less expensive [car] to reduce [her] . . . note" for her SUV, Greer answered, "Well, considering I am upside down on it now, no." According to Greer, having both her SUV and the Chevy truck was "necessary" because B.S., who was a high school student, lived in her home. Although she did not receive any "support for [his] care," because he would "be going to . . . Boston University," the expenses included on her Statement "could potentially" be reduced "in the future but not by much."

Greer further testified that the Harris County Appraisal District "represented . . . the fair market value" of her home as "around $200,000" and the $2,000 amount that she had included in the Statement represented the "equity of [her] home." Further, the amount of "$4,400 per month that [she] receive[d] as an attorney" was her "net wages"; her "gross amount of [monthly] wages" was $7,000; and the "net wages" amount that she listed on her Statement did not include "any

4

bonuses or other compensation [she] [c]ould [have] receive[d] from [her] employment." Greer explained that, although she "[m]aybe sometimes" received an end-of-year bonus from her employer, a bonus was not guaranteed, and she had not included any bonus amount on her Statement. Greer testified that she also received a tax refund of more than $3,000 in mid-February 2019 and did not dispute that she had received a tax refund "in excess of $7,000" related to her "2016 [tax] return" and a tax refund "in excess of $9,000" related to her "2017 [tax] return."

Further, Greer's Statement shows, and she testified at the hearing, that she receives child support payments of $3,850 each month, of which $3,300 was paid by Melcher and $550 was paid by K.G.'s father, Tanner Smith. Greer explained that the court order regarding child support payments for K.G. provided that Smith was required to pay "zero" and he made child support payments "voluntarily without a court order." A previous order, which had obligated Smith to make child support payments, had been modified in 2009 through the Attorney General's office. At that time, Greer and Smith represented to the Attorney General that they were "reconciling" and "request[ed] [that] the child support order be reduced to zero." However, Greer had testified in a deposition in the instant case that her "representation to the Attorney General was not true." Greer further testified that she "did not identify" in her Statement that she "receive[d] cash medical support" from Smith and Melcher and that each was obligated to reimburse her for fifty

5

percent of any uninsured medical costs.  However, Greer noted that she did not take any reimbursements "in[to] account in the numbers [that she had] reflected as [her] expenses for medical and dental" because she currently was not "receiving [fifty] percent" from Smith and Melcher.  The amount she included on her Statement represented "100 percent of [her] medical expenses."

Greer also testified that she had "attempted to take out loans," had "attempted to get credit cards," but had been "denied for everything," the limits on her credit cards were "all maxed out," she had borrowed $10,000 from her mother in 2018; and she had taken out two loans from her 401(k) plan "to help through litigation." Greer testified that her 401(k) plan contributions were "voluntary" and she contributed approximately $355 per month, which is the amount that her employer "matches."  Finally, Greer noted that she had had "some plastic surgery" for which she "did not spend any money out of pocket" and for which no one had loaned her money.  And any "reports . . . representing [that her plastic surgery] was simply discounted for [her]," were "inaccurate."

Finally, on her own behalf, Greer testified in narrative form that her "expenses [were] greater that her income" and "looking at" the Statement and "[even] with failing to include a $300 car payment for [the Chevy truck]," her expenses "greatly outweigh[ed]" her income and she did not "have the ability to afford costs."

After the hearing, the trial court signed an order, sustaining court reporter Nagji's challenge to Greer's Statement and finding,[6] in part, that Greer:

- "indicated that her [Statement] was not accurate as it was prepared in a rush, and she omitted [the Chevy truck] she owns and additional resources from [the Statement]";

- "testified [that] she [had] not included as income bonuses [that] she receive[d] as part of her income, but . . . bonuses are not guaranteed";

- "testified [that] she makes an elective contribution to her 401([k]) with her employer for 3% of her salary to maximize the matching on their contributions, but [had] chosen not to stop [making] that contribution";

- "testified [that] the $4,408 in monthly income listed on [the Statement] was her net resources after deductions, and that her gross income was closer to $7,000/[month]";

- "testified that she still is receiving $0[] in child support from [Smith] despite them not having reconciled and that no effort to modify [the] support order ha[d] been undertaken in the approximate decade since that obligation was reduced";

- "testified that [Smith] pays some [child] support [payments] voluntarily, but did not include that income on her Statement";

- "testified [that] she voluntarily has undertaken the care of [B.S.] who has turned [eighteen years old] and will be graduating high school" and "child support [payments]" previously forwarded to her by B.S.'s mother "ha[d] stopped";

- "testified [that] she provide[d] the [Chevy truck] that was omitted from her Statement . . . to [B.S.] for his use" and "she is under no

---

[6]    *See id.* 145(f)(6).

legal obligation to care for or support [B.S.], and indicated [that] there is also a note on [the Chevy truck] that she pays";

- "testified [that] she bought the [SUV] listed on her Statement [in] December . . . 2017, and that the note is approximately $900/[month]" and "stated [that] she is upside down on the [SUV] and has not considered trading in or selling [it] to purchase a cheaper [car]";

- "testified [that] she has attempted to secure loans, has two loans against her 401([k]), and that her credit card limits are maxed out";

- "d[id] not lack funds to pay under [Texas Rule of Civil Procedure] 145(e)(4)";

- "ha[d] resources to pay costs, namely a tax refund" and a car that "could be sold";

- "could increase her income by ceasing her retirement contribution and securing a child support order [related to Smith]"; and

- "could reduce her expenses by selling one of her [cars] and ceasing her voluntary support of [B.S.]."

The trial court also found that:

"[Greer's] representations as to her financial condition [were] not credible given her lack of knowledge as to certain facts, admission [that] her Statement was not accurate and omitted information, and [her] admission [that she] ha[d] made a material misrepresentation of fact to the Office of the Attorney General that was subsequently incorporated into a court order in a separate case.

The court then sustained court reporter Nagji's motion and ordered that Greer was "obligated to pay all costs [that] she incur[red] in this proceeding and/or on appeal, unless otherwise allocated by th[e] [c]ourt and/or the Court of Appeals." Greer

8

timely filed in this Court her motion for review of the trial court's order.[7]  Neither court reporter Nagji nor Melcher have filed a response.

## Texas Rule of Civil Procedure 145

Texas Rule of Civil Procedure 145 exempts a party who files a Statement of Inability to Afford Payment of Court Costs from paying court costs, including the fees charged by the trial court clerk and court reporter for preparation of the appellate record.  *See* TEX. R. CIV. P. 145(a), (c); *see also Abrigo v. Ginez*, No. 14-18-00280-CV, --- S.W.3d ---, 2019 WL 2589877, at *2–3 (Tex. App.—Houston [14th Dist.] June 25, 2019, no pet.).  A court reporter may challenge a statement and require the statement's declarant to prove her inability to pay costs. *See* TEX. R. CIV. P. 145(f)(3).  Before requiring a declarant to pay costs, the trial court must hold an "oral evidentiary hearing" at which the declarant has the burden to prove her inability to pay costs. *See id.* 145(f)(5); *see Abrigo*, 2019 WL 2589877, at *3.  If ordered to pay costs, the declarant may file a motion to challenge the trial court's order in the court of appeals.  *See* TEX. R. CIV. P. 145(g)(1)–(2).

We review the trial court's order sustaining a challenge to a party's statement for an abuse of discretion and will affirm the order unless the record reflects that the trial court acted in an arbitrary and unreasonable manner or without reference to any guiding rules or principles.  *See Koehne v. Koehne*, No. 01-17-00016-CV, 2017 WL

---

[7]     *See id.* 145(g)(1)–(2).

9

2375789, at *2 (Tex. App.—Houston [1st Dist.] June 1, 2017, order); *Jackson v. Tex. Bd. of Pardons & Paroles*, 178 S.W.3d 272, 275 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

**Ability to Afford Costs**

In a portion of her sole issue, Greer argues that the trial court erred in sustaining court reporter Nagji's motion challenging Greer's Statement and finding that she could afford to pay costs because the court "failed to look at [her] expenses and debts," "only made speculative findings," and did not consider her "total outstanding debt."

Here, the trial court found that Greer "d[id] not lack funds to pay" costs, had "resources to pay costs, namely a tax refund and an additional [car] that could be sold," "could increase her income by ceasing her retirement contribution and securing a child support order [related to Smith]," and "could reduce her expenses by selling one of her [cars] and ceasing her voluntary support of [B.S.]."

The "critical inquiry" under rule 145 is whether a party "can afford to pay costs." *In re A.M.*, 557 S.W.3d 607, 610 (Tex. App.—El Paso 2016, no pet.) (emphasis omitted); *see* TEX. R. CIV. P. 145 cmt. ("The issue is not merely whether a person can pay costs but whether the person can afford to pay costs."); *see also Gonzalez v. Gonzalez*, No. 08-01-00453-CV, 2003 WL 1759587, at *3 (Tex. App.— El Paso Apr. 3, 2003, no pet.) (mem. op.) (explaining, under former Texas Rule of

10

Appellate Procedure 20.1, trial court should consider party's "present ability to pay costs rather than her future, more speculative ability"). As shown by her sworn Statement and hearing testimony, Greer's monthly expenses exceed her monthly income.[8] Contrary to the trial court's findings, the income shown on her Statement and to which she testified at the hearing included child support payments that both Melcher and Smith made each month. Her expenses "could potentially" be reduced because B.S. would be attending college "but not by much." Greer had "attempted to take out loans," had "attempted to get credit cards," but had been "denied for everything," and had taken two loans against her 401(k) plan with her employer "to help through litigation." And the limits on her credit cards were "all maxed out."

Moreover, the "outstanding debt" on the Chevy truck that she owned was "equal" to its value, and she was "upside down on" her SUV, which had a value of negative $5,000. *See Koehne*, 2017 WL 2375789, at *3 (concluding evidence did not support the trial court's finding party could borrow money using truck as collateral when truck valued at $1,759 and had lien against it). Although Greer testified that she had received tax refunds in the past, the evidence did not show that she had any funds from a tax refund at the time of the hearing. Further, ceasing her

---

[8] We do not consider documents that Greer attached to her motion for review filed in this Court because the documents were not part of the record before the trial court. *See Allen v. Porter*, No. 01-16-00823-CV, 2017 WL 2255751, at *3 n.1 (Tex. App.—Houston [1st Dist.] May 23, 2017, no pet.) (mem. op.).

11

voluntary contribution to her employer's 401(k) plan would increase her income by only approximately $355 each month. Greer's testimony reflected that "looking at" the Statement and "[even] with failing to include a $300 car payment for [the Chevy truck]," her expenses "greatly outweigh[ed]" her income and she did not "have the ability to afford costs."

Although the trial court may have evaluated Greer's credibility, the court may not disregard evidence of Greer's current financial condition at the time she filed her Statement. *See Hollingsworth v. Walaal Corp.*, No. 05-17-00555-CV, 2017 WL 2492788, at *2 (Tex. App.—Dallas June 9, 2017, no pet.) (mem. op.); *Koehne*, 2017 WL 2375789, at *3; *see also In re Sosa*, 980 S.W.2d 814, 816 (Tex. App.—San Antonio 1998, orig. proceeding).

The evidence shows that Greer's current financial condition is such that her monthly expenses exceeded her monthly income and she is not able to afford costs of appeal. Further, because the evidence presented at the hearing did not rebut the evidence of Greer's current financial condition, we conclude that the trial court abused its discretion in sustaining court reporter Nagji's motion challenging Greer's Statement. *See Hollingsworth*, 2017 WL 2492788, at *2–3; *Koehne*, 2017 WL 2375789, at *3; *see also Gonzalez*, 2003 WL 1759587, at *3.

Because we have concluded that the trial court erred in sustaining Nagji's challenge, we need not address Greer's other arguments. *See* TEX. R. APP. P. 47.1.

12

We grant Greer's motion, reverse the trial court's order, and order that Greer may proceed with this appeal without payment of filing fees or costs for the record. We further direct the court reporter to file a reporter's record within 30 days of the date of this order.[9] Appellant's brief will be due 30 days after the reporter's record is filed.

**PER CURIAM**

Panel consists of Justices Kelly, Hightower, and Countiss.

---

[9] The trial court clerk did not challenge Greer's Statement and has filed a clerk's record and supplemental clerk's record in this appeal.